# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff <br> v. <br> EUSTORGIO FLORES, <br> Defendant | CASE NO. 1:08-CR-0124 AWI-1 <br><br> ORDER ON DEFENDANT'S MOTION TO REDUCE SENTENCE <br><br> (Doc. No. 477) |

Defendant Eustorgio Flores ("Flores") seeks a reduction of sentence under 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the federal sentencing guidelines. The United States opposes a reduction. For the reasons that follow, Flores's motion will be denied.

## BACKGROUND

Flores, along with co-defendants Rodolfo Suarez and Pioquin Santacruz, were tried under a third superseding indictment for various criminal drug offenses. The superseding indictment contained six counts. See Doc. No. 142. Count One alleged violations of 21 U.S.C. §§ 841(a), 841(b), and 846, conspiracy to distribute and to possess with intent to distribute methamphetamine and cocaine, against Flores, Suarez, and Santacruz.[1] See id. Count One alleged the existence of a conspiracy beginning at an unknown time (but no later than September 6, 2006) and ending on April 17, 2008, in Tulare, Kern, and San Bernardino Counties, California and Maui County, Hawaii, to distribute and possess to distribute 500 grams or more of a mixture of

---

[1] Count One was alleged against other co-defendants. However, those co-defendants entered guilty pleas prior to the trial in this matter. As such, for this count, the Court will reference only Flores, Suarez, and Santacruz.

methamphetamine, or 50 grams or more of methamphetamine, and/or 5 kilograms or more of a mixture or substance containing cocaine. See id. Count Two alleged violations of 21 U.S.C. §§ 841(a) and 841(b), and 18 U.S.C. § 2, distribution of methamphetamine and cocaine, against Flores and Santacruz. See id. Count Two alleged that, on September 7, 2006, in Tulare and Kern Counties, California, Flores and Santacruz knowingly and intentionally *distributed* 500 grams or more of a mixture of methamphetamine, 50 grams or more of methamphetamine, and/or 5 kilograms or more of a mixture or substance containing cocaine. See id. Count Three was identical to Count Two, except that Flores and Santacruz were charged with *possession* with intent to distribute methamphetamine and cocaine. See id. Count Four alleged violations of 21 U.S.C. §§ 841(a), 841(b), and 846, attempted distribution of methamphetamine, against Flores.[2] See id. Count Four alleged that, on July 23, 2007, Flores attempted to distribute 500 grams or more of a mixture of methamphetamine or 50 grams of methamphetamine in Tulare County, California. See id. Count Five alleged violations of 21 U.S.C. §§ 841(a), 841(b), and 860, distribution of methamphetamine near an elementary school, against Flores.[3] See id. Count Five alleged that, on January 28, 2008, Flores distributed methamphetamine within 1,000 feet of a public elementary school in Tulare County, California. See id. Finally, Count Six alleged violations of 21 U.S.C. §§ 841(a) and 841(b), and 18 U.S.C. § 2, possession with intent to distribute methamphetamine, against Flores and Suarez. See id. Count Six alleged that, on April 17, 2008, Flores and Suarez possessed with intent to distribute 500 grams or more of a mixture of methamphetamine or 50 grams or more of methamphetamine in Tulare County, California. See id.

On April 23, 2010, after a 10-day trial, the jury returned unanimous verdicts. See Doc. Nos. 257, 258, 259. With respect to Santacruz, the jury found that he was guilty of Counts One, Two, and Three, but that the government had failed to prove the drug quantities alleged in the Third Superseding Indictment. See Doc. No. 259. With respect to Suarez, the jury found that he was not guilty as to Count Six, was guilty as to Count One, and that the United States had proven

---

[2] Count Four was also alleged against one other co-defendant, who entered a guilty plea prior to trial. As such, the Court only references Flores.

[3] Count Five was also alleged against one other co-defendant, who entered a guilty plea prior to trial. As such, the Court only references Flores.

2

the amount of methamphetamine alleged in the Third Superseding Indictment, but did not prove the alleged amount of cocaine. See Doc. No. 258. With respect to Flores, the jury found that he was not guilty as to Counts Two and Three, was guilty as to Counts One, Four, Five, and Six, and that the United States had proven all quantities of methamphetamine and cocaine alleged in the Third Superseding Indictment. See Doc. No. 257.

On July 1, 2010, Flores submitted objections to the Presentence Report, including an objection that referenced Kern, San Bernardino, and Maui Counties. See Doc. No. 299. Specifically, Flores objected: "The counties of Kern and San Bernardino were connected with alleged sales that were transported to Maui. At trial, Flores was found not guilty on Count 2 . . . and Count 3 . . . . Counts 2 and 3 pertained to the methamphetamine and cocaine that was seized in Maui. The conviction for conspiracy is an inconsistent verdict with the finding of Flores not guilty on Counts 2 and 3." Id.

Flores was sentenced by Senior District Judge Oliver Wanger on August 23, 2010. See Doc. No. 326. In pertinent part, Judge Wanger found:

> If I ignore the quantities in the Hawaii transactions which could easily be attributable, we still have the 1.5 or more kilos of crystal meth, which equates to a level 38, and the jury convicted Mr. Flores of the attempted distribution of one pound, which additionally is separate – a different transaction from the 4.5 pound, or 2 kilo crystal meth deal that was distributed April 17th as part of the conspiracy.

Sentencing Hearing Transcript (Doc. No. 398) 15:18-24. The 4.5 pounds of crystal meth referred to Count Six and possibly Count One and a transaction in April 2008, and the attempted distribution of 1 pound of crystal meth referred to Count Four and a transaction in July 2007. See Doc. No. 142. Out of an abundance of caution, Judge Wanger did not add additional offense levels under 2D1.2 and found that the offense level would remain at Level 38. See Doc. No. 398 at p.16. However, Judge Wanger did increase the offense level by 2 based on a finding that Flores was a "manager or supervisor" in a criminal activity. See id. This brought the offense level to 40. See id. at pp.16-17. Flores had a criminal history category of 2, which yielded a guideline range of 324 to 405 months. See id. at p.17. Judge Wanger commented that "this was a long-standing and wide-ranging conspiracy that was active," and then imposed a sentence at the low end of the guideline range of 324 months. See id.

3

Flores appealed his convictions of Counts Four and Five to the Ninth Circuit. See Doc. No. 413. The Ninth Circuit affirmed the convictions and found that sufficient evidence supported the jury's guilty verdict. See id.

*Legal Framework*

"As a general matter, courts may not alter a term of imprisonment once it has been imposed." United States v. Hicks, 472 F.3d 1167, 1169 (9th Cir. 2007). Nevertheless, 18 U.S.C. § 3582(c)(2) creates a narrow exception to the general rule of sentencing finality by allowing courts to modify a sentence to give defendants "the benefit of later enacted adjustments to the judgments reflected in the [Sentencing] Guidelines." Dillon v. United States, 560 U.S. 817, 828 (2010); United States v. Mercado-Moreno, 869 F.3d 942, 948 (9th Cir. 2017). A court may reduce a sentence under 3582(c)(2) if: (1) the sentence is based on a sentencing range that has subsequently been lowered by the Sentencing Commission; and (2) such a reduction is consistent with the policy statements issued by the Sentencing Commission. Dhillon, 560 U.S. at 828; Mercado-Moreno, 869 F.3d at 949; United States v. Pleasant, 704 F.3d 808, 810 (9th Cir. 2013).

Under the first step, the court determines "the amended guideline range that would have been applicable to the defendant if the [relevant amendment] had been in effect at the time the defendant was sentenced." USSG § 1B1.10(b)(1) (2014); Mercado-Moreno, 869 F.3d at 949. The court only substitutes the relevant amendment for the "corresponding guideline provisions that were applied when the defendant was sentenced" and must "leave all other guideline application decisions unaffected." USSG sec. 1B1.10(b)(1); Dillon, 560 U.S. at 827; Mercado-Moreno, 869 F.3d at 949. A defendant is ineligible for a sentence reduction if the relevant amendment "does not have the effect of lowering the defendant's applicable guideline range." USSG § 1B1.10(a)(2)(B); Mercado-Moreno, 869 F.3d at 949.

If the first step is met, the court proceeds to the second step and determines whether, in its discretion, "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U.S.C. § 3553(a)]" and "under the particular circumstances of the case." Dillon, 560 U.S. at 826-27; Mercado-Moreno, 869 F.3d at 949. "Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the

4

proceedings under § 3582(c)(2) into plenary resentencing proceedings." Dhillon, 560 U.S. at 827; Mercado-Moreno, 869 F.3d at 949.

In resolving a § 3582(c)(2) motion in drug cases, district courts "may make supplemental findings of drug quantity if they are necessary to determine the defendant's eligibility for a sentence reduction in light of a retroactive Guidelines amendment. In doing so, the district court may not make supplemental findings that are inconsistent with the findings made by the original sentencing court." Mercado-Moreno, 869 F.3d at 953-54. Additional findings of drug quantity may be necessary "if the sentencing court's quantity finding was ambiguous or incomplete." Id. at 957. District courts "must determine whether the defendant is more likely than not responsible for the new quantity threshold under the retroactive Guidelines amendment." Id. Trial transcripts, sentencing transcripts, and portions of a presentence report that where either admitted by the defendant or adopted by the sentencing court, may all be considered by the district court. Id. District courts have "broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold a hearing when making supplemental findings of drug quantity." Id. at 948.

## **DEFENDANT'S MOTION**

*Defendant's Argument*

Flores argues that he is entitled to a two-level reduction in his base offense level, which results in a lower sentencing range, through the retroactive application of Sentencing Amendment 782. Flores argues that, under the sentencing guidelines applicable to him at the time of sentencing, he was found to have a base offense level of 38 because more than 1.5 kilograms of methamphetamine was attributable to him. Specifically, Judge Wanger found that 2.45 kilograms of methamphetamine were attributable to him. However, with a two-level reduction, the new base level offense is 36. Applying Judge Wanger's other decisions, the new total offense level is 38, which yields a range of 262 months to 324 months. Because he was sentenced at the low end of the range by Judge Wanger, Flores argues that he should be resentenced at the low end of the range to 262 months. With this new sentence, Flores's projected release date would be advanced from October 25, 2031 to April 12, 2027.

5

As part of his supplemental briefing, Flores argues that the parties disputed the overall drug amount and did not limit their arguments to any particular count. Judge Wanger's findings resulted from considering extensive arguments. Because Judge Wanger's finding is specific and the result of full litigation, no further findings are necessary. Alternatively, if supplemental findings are necessary, a hearing should be held. Unlike in *Mercado-Moreno*, this case was not the result of a plea bargain or an admitted drug quantity. Rather, this case was litigated at trial and Flores challenged the drug amounts listed in the Presentence Report. Given these differences and the nature of the disputes at trial and sentencing, an evidentiary hearing should be ordered.

*Government's Opposition*

The United States argues that the evidence at trial and considered by Judge Wanger demonstrates that over 9 kg of methamphetamine is attributable to Flores. The United States points to various quantities of methamphetamine that were associated with a September 2006 drug buy, a November 2006 drug buy, a January 2007 Hawaii drug bust, a July 2007 attempted drug buy, a January 2008 drug buy, and an April 2008 drug buy. Further, large quantities of cocaine were involved in these transactions. Under the marijuana equivalencies for methamphetamine and cocaine, the total drugs in this case exceed 180,000 kg of marijuana, which in turn exceeds the 90,000 kg limit for a Level 38 Offense. Because Judge Wanger found a base offense level of 38, no reduction in sentence will result.

*Amendments 782 and 788*

In *Mercado-Moreno*, the Ninth Circuit described Amendments 782 and 788:

> The Drug Quantity Table in USSG § 2D1.1(c) specifies the base offense levels for quantity ranges of various drugs, with a maximum of 38 levels. In 2014, Amendment 782 modified the Drug Quantity Table to reduce by two points the base offense levels for specific drug types and quantities. See USSG supp. app. C, amend. 782 (Nov. 1, 2014). At the same time, Amendment 788 made Amendment 782 retroactive for all previously sentenced defendants. See id., supp. app. C, amend. 788 (Nov. 1, 2014); see also id. § 1B1.10(d) (2014) (specifying all retroactively applicable Guidelines amendments).
>
> Amendment 782 increased the quantity of actual methamphetamine required to trigger the maximum base offense level from 1.5 kilograms to 4.5 kilograms. Id. § 2D1.1(c)(1) (2014). Because the maximum base offense level of 38 still applied to defendants responsible for at least 4.5 kilograms of actual methamphetamine, Amendment 782 had no effect on those defendants. However, Amendment 782 reduced the base offense level to 36 for defendants who were responsible for at

least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine. Id. § 2D1.1(c)(2) (2014).

Mercado-Moreno, 869 F.3d at 949-50.

*Discussion*

a. <u>Ambiguous or Incomplete Quantity Finding</u>

The Court has quoted the key sentencing paragraph above. The parties both rely on this paragraph and do not dispute that Judge Wanger made a finding that attributed 5.5 lbs. of methamphetamine to Flores. 5.5 lbs. are 2,494.76 g,[4] but Flores's motion argued that the Presentence Report indicated that 5.5 lbs. is approximately 2.45 kg. See Doc. No. 477 at 4, 6; Presentence Report ¶ 33 (explaining that 4.5 lbs. was "approximately 2 kilograms and that 1 lbs. was 453.50 grams, but not expressly stating that Flores was responsible for 2.45 kg). Flores's reply concedes that 2.49 kg is the more accurate number based on the findings of the Presentence Report and Judge Wanger at the sentencing hearing. See Doc. No. 489 at 1 n.1. Based on Flores's concession, the Court views Judge Wanger as having found 2,494.76 g attributable to Flores. Pursuant to *Mercado-Moreno*, the Court is bound by and accepts the finding by Judge Wanger that Flores is responsible for 5.5 lbs. of methamphetamine, which is 2.494 kg,[5] from the July 2007 and April 2008 transactions. See Mercado-Moreno, 869 F.3d at 953-54.

Having determined that Judge Wanger made a clear quantity finding, the question is whether that finding was complete. The language used at the sentencing hearing does not indicate that Judge Wanger's 5.5 lbs. quantity finding was an exclusive or complete quantity finding. First, Judge Wanger stated that if he "ignored" the "Hawaii transactions,"[6] even though those

---

[4] See https://www.metric-conversions.org/weight/pounds-to-grams.htm.

[5] Flores argues that his counsel disputed this amount in the Presentence Report. It is true that Flores's counsel objected to ¶ 33, which identified the 5.5 lbs. of methamphetamine from the July 2007 and April 2008 transactions. See Doc. No. 299. However, the objection never challenged the actual quantities of methamphetamine involved. See id. Rather, the objection/dispute went to the sufficiency of the evidence to connect Flores to those transactions or convict him of the offenses charged. See id. The jury and Judge Wanger both concluded that the evidence was sufficient, and those findings are now final. Therefore, the Court concludes that Flores did not dispute the actual quantities involved in connection with the Presentence Report.

[6] The Trial Transcript and the Presentence Report do not contain references to any specific drug transactions in Hawaii. Therefore, the Court takes the "Hawaii transactions" to mean transactions between Flores and Government Witness 1 in which Government Witness 1 purchased methamphetamine and cocaine from Flores in California, and then transported the drugs back to Hawaii.

7

1 transactions "could easily be atribut[ed]" to Flores, there was still clear evidence that Flores was
2 responsible for over 1.5 kg of methamphetamine. <u>See</u> Doc. No. 398 15:18-24.  By definition,
3 "ignoring" is not the same as ruling that the evidence is insufficient, rather, "ignoring" simply
4 means something is not considered or addressed.  It is tantamount to no finding at all.  Second,
5 Judge Wanger did not state that the 5.5 lbs. of methamphetamine was the only quantity of
6 methamphetamine that was attributable to Flores, nor did he expressly reject any other quantities
7 of methamphetamine from other transactions that could be attributable to Flores.  Judge Wanger's
8 language clearly shows that he believed that "Hawaii transactions" could be attributed to Flores.
9 However, the government argued to the jury that specific amounts were at issue in Counts Four
10 and Six, which totaled 5.5 lbs., and the jury found Flores guilty of those counts and that the
11 government had proven the quantities at issue.  <u>See</u> Transcript (Doc. No. 364) at 1424:5-19; Doc.
12 No. 257 (Verdict).  In other words, the jury accepted the United States's theory.  Because the 5.5
13 lbs./2.49 kg easily exceeded the 1.5 kg needed to trigger the Level 38 offense level, there was no
14 need for Judge Wanger to address objections to any other transactions or make any other quantity
15 findings related to any other transactions.

16      The Court concludes that Judge Wanger believed that transactions other than those
17 associated with the July 2007 and April 2008 transactions could be attributed to Flores, but he did
18 not address, and did not need to address, such transactions.   Therefore, Judge Wanger's quantity
19 determination was incomplete.  Because Judge Wanger's quantity finding was incomplete, this
20 Court may make supplemental findings.  <u>See</u> <u>Mercado-Moreno</u>, 869 F.3d at 957.

21      <u>b.</u>    <u>Supplemental Findings</u>

22      In making supplemental findings, the Court may consider a number of sources of
23 information, including the verdict, the sentencing transcript, the presentence report, and the trial
24 transcript.  <u>See</u> <u>id.</u>  Supplemental findings do not need to be supported by evidence that meets the
25 "beyond a reasonable doubt" standard, rather the findings need only be supported by evidence that
26 shows that the findings are more likely true than not.  <u>Id.</u>

27      (1)    <u>Sentencing Transcript</u>

28      In addition to the quantity determination of 5.5. lbs. of methamphetamine, Judge Wanger

found that Flores had numerous phone conversations with co-defendants, government witnesses, and/or undercover agents regarding methamphetamine and cocaine. See Doc. No. 398 at 13:2-15:17. Judge Wanger noted that Flores was identified by a witness as a source of drugs that were seized in Maui County. See id. Judge Wanger also determined that Flores was a manager, and thus had a leadership role, in a conspiracy that was long-standing, wide ranging, and active. See id. at 16:7-17:14.

### (2) Trial Transcript

The United States presented evidence of telephone calls with or by Flores, the testimony of state and federal law enforcement personnel (including DEA Agents Kuehnlein and Borowski who "decoded" relevant conversations involving Flores), and the testimony of Government Witness 1, a Maui County resident and drug dealer who purchased methamphetamine and cocaine from Flores. Government Witness 1 was an important witness to the United States. Government Witness 1 had been arrested in January 2007 in Maui County when Hawaiian law enforcement officers seized about 6 lbs. of methamphetamine and 18 kg of cocaine from his home.[7] Government Witness 1 identified Flores and Santacruz as sources of the drugs and helped government agents make contact with and investigate Flores. Government Witness 1 testified at trial in order to help himself and possibly lower his sentence/obtain an early release in Hawaii.

As relevant to this motion, Government Witness 1 explained some of the code words used between himself and Flores, and explained what Flores said on intercepted phone calls (some of the words were unintelligible to the transcriber). See Doc. No. 361 (Transcript) at 875:13-878:13. Government Witness 1 testified that between 2005 and 2006, he flew to California at least five times and purchased methamphetamine and cocaine from Flores. See id. at 872:4-12. Government Witness 1 would purchase the drugs, place them in creatine containers, place the containers in his luggage, and then fly back to Hawaii. See id. at 873:24-875:4. The methamphetamine purchases prior to September 2006 (2005 to August 2006) were at least three pounds each. See id. at 880:14-22. Government Witness 1 also described a drug transaction in November 2006. Government Witness 1 negotiated a deal with Flores for 5 lbs. of

---

[7] This was the largest drug bust in Maui County history, according to Agent Borowski.

9

methamphetamine and 5 kg of cocaine. See id. at 920:17-921:10. Government Witness 1 flew into Las Vegas, Nevada with an associate, Matt Otterson, and then drove to Victorville, California, where he met Flores. See id. at 921:11-24. Government Witness 1 obtained the 5 lbs. of methamphetamine and 5 kg of cocaine from Flores. See id. Government Witness 1 and Otterson drove back to Las Vegas and repackaged the drugs. See id. at 922:2-13. Government Witness 1 and Otterson then attended a tax relief and asset protection class before returning to Maui. See id. at 922:14-924:21. Government Witness 1 testified that the cocaine and methamphetamine that was seized at his residence came from either Flores or Santacruz. See id. at 883:11-20.

The United States presented other testimony and witnesses that tended to support Government Witness 1's testimony regarding a buyer/seller relationship with Flores. First, Agent Borowski heard calls between Flores and Government Witness 1. Agent Borowski explained that Flores and Government Witness 1 used code words to negotiate and arrange for the sale of methamphetamine and cocaine, and indicated that their coded conversations reflected an established and comfortable relationship given the quantities involved and the pricing information exchanged. See Doc. No. 360:670:11-673:2. Further, shortly after his arrest in Hawaii, Government Witness 1 correctly identified Flores from a DMV photo that Agent Borowski showed him. See id. at 632:15-635:15. Second, the United States called a witness from Verizon wireless service. The witness testified in relevant part that a cell phone associated with Otterson made calls while it was in Hawaii, Las Vegas, Nevada, and Barstow/Victorville, California on November 14, 2006. See Doc. No. 362 (Transcript) at 991:1-996:12. The locations identified by the Verizon employee were consistent with the route described by Government Witness 1 for the November 2006 drug transaction with Flores. Third, Government Witness 1 worked closely with FBI Agent Kuehnlein. After his arrest in January 2007, Government Witness 1 made calls to Flores to set up a drug buy between Flores and Kuehnlein, provided information to the DEA, and attempted to assuage fears by Flores and his wife regarding Agent Kuehnlein's undercover persona. See, e.g., Doc. No. 148:13-20, 158:25-159:17, 161:2-162:4, 165:9-166:15, 176:7-15, 184:22-185:25, 190:23-194:18.

### (3) Verdict

As noted above, the jury acquitted Flores of Counts Two and Three, which related to a September 2006 drug transaction, but convicted Flores on all other counts and found that the United States had met its quantity determinations. Of particular note is Count One. As explained above, Count One alleged a conspiracy that began at an unknown time, but no later than September 2006, and continued until April 2008. See Doc. No. 142. Count One described the conspiracy as one to possess and distribute methamphetamine and cocaine in Tulare, Kern, and San Bernardino Counties, California and Maui County, Hawaii. See id. The only link to Hawaii in this case is Government Witness 1.[8]

### (4) Findings[9]

Five pounds (or 2,267.96 g or 2.267 kg)[10] of methamphetamine from a transaction between Flores and Government Witness 1 in Victorville, California in November 2006 is attributable to Flores.[11]

---

[8] The Court notes that Flores's counsel objected with respect to the Presentence Report that the jury's not guilty finding as to Counts Two and Three represented a rejection of a link to Maui County/Hawaii. See Doc. No. 299 at ¶¶ 1, 12 (objecting to Paragraphs 7 and 30 of the Presentence Report). The Court disagrees with this objection. As discussed above, evidence of transactions between Flores and Government Witness 1, other than the September 2006 transaction, was presented to the jury. Also, unlike other transactions that were described, Government Witness 1 testified that he spoke with and obtained drugs from Santacruz during the September 2006 transaction, not from Flores. See Doc. No. 361 at 938:19-944:16. The jury's acquittal of Flores on Counts Two and Three is simply a finding that the government had not met its burden as to Flores regarding that particular transaction. Given the conviction of Flores on Count One, the jury did not reject all possible links between Flores and Government Witness 1/Hawaii.

[9] The Court has reviewed the trial transcript, the presentence report, the verdict, the third superseding indictment, and the sentencing transcript. As part of that review, the Court read the objections and arguments of Flores's counsel with respect to Government Witness 1 and the case against Flores. Flores's counsel argued that Government Witness 1 was not credible because he was a liar, received a sweetheart deal from the Hawaii prosecutors, and was doing all he could to reduce his sentence. Flores's counsel also argued that Flores was never seen with drugs in his possession, and the case against him was based on pure speculation. Even considering these arguments, the Court is satisfied that the materials reviewed demonstrate that it is more likely true than not that the November 2006 transaction with Flores described by Government Witness 1 actually occurred and that the 5 lbs. of methamphetamine from that transaction is attributable to Flores. Additional citation to the trial transcripts or arguments relating to the sentencing proceeding will not change this conclusion. Therefore, a hearing is unnecessary and Flores's request for one is denied.

[10] https://www.metric-conversions.org/weight/pounds-to-grams.htm.

[11] Given this finding, it is unnecessary to make any findings regarding cocaine, and the Court does not do so. Also, the Court notes that the parties did not mention the 2005 transactions between Government Witness 1 and Flores, although the Government did mention pre-September 2006 drug transactions in its closing argument. See Doc. No. 364 at 1398, 1420-21. Again, given the Court's finding with respect to the November 2006 transaction, it is unnecessary for the Court to make any findings with respect to the 2005 transactions described by Government Witness 1.

This finding is consistent with the testimony of Government Witness 1 who expressly testified to such a transaction; is consistent with the testimony of the Verizon wireless employee, which supported the movements described by Government Witness 1 concerning this transaction; is consistent with the jury's guilty finding and quantity finding with respect to Count One in that the quantities exceed 500 grams of a mixture and 50 grams of pure methamphetamine, and Government Witness 1 is the only link between Flores and Hawaii; is consistent with an established relationship between Flores and Government Witness 1, as opined by Agent Borowski; and is consistent with Judge Wanger's observations that "Hawaii transactions" could easily be attributed to Flores and that Flores was part of long standing, wide ranging, active conspiracy.

### 3. Conclusion

As discussed above, Judge Wanger attributed a total of 5.5 lbs./2.494 kg of methamphetamine to Flores from the transactions reflected in Counts Four and Six and occurring in July 2007 and April 2008. With the addition of 2.267 kg of methamphetamine from the November 2006 transaction to the 2.494 kg found by Judge Wanger, a total of at least 4.761 kg of methamphetamine is attributable to Flores. 4.761 kg exceeds the 4.5 kg threshold for a Level 38 Offense set by Amendment 782. Because Judge Wanger initially utilized a Level 38 Offense based on more than 1.5 kg of methamphetamine being attributable to Flores, Flores does not benefit from Amendment 782. See Mercado-Moreno, 869 F.3d at 949-50. Therefore, Flores's § 3582(c)(2) motion for a reduction of sentence must be denied. See id.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for reduction of sentence under 18 U.S.C. § 3582(c)(2) is DENIED.

IT IS SO ORDERED.

Dated:   August 31, 2018                               _____
                                                        SENIOR DISTRICT JUDGE

12